PAUL K. CHARLTON
United States Attorney
District of Arizona

JOSEPH C. WELTY
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Arizona State Bar No. 012409
Telephone (602) 514-7500
joseph.welty@usdoj.gov

___ FILED   X LODGED
___ RECEIVED ___ COPY

JAN 2 5 2006

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

X FILED   ___ LODGED
___ RECEIVED ___ COPY

APR 1 2 2006

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

United States of America,

           Plaintiff,

    v.

Casey Cutler,

           Defendant.

CR-05-0550-PHX-SRB

**PLEA AGREEMENT**

Plaintiff, United States of America, and defendant, Casey Cutler, hereby agree to the following disposition of this matter:

## PLEA

Defendant will plead guilty to the Indictment charging defendant with a violation of Title 18, United States Code, Section 175(a), Attempted Production of a Biological Toxin for use as a Weapon, a Class A felony offense.

## TERMS

Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining defendant's sentence. Defendant understands, however, that the Sentencing Guidelines are only advisory, and that after considering the Sentencing Guidelines, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction.

//

//

1   **1.     MAXIMUM PENALTIES**

2          a.     A violation of Title 18, United States Code, Section 175(a), is punishable by a

3   maximum fine of $250,000.00, a maximum term of imprisonment of up to life, or both and a

4   term of supervised release of five years.

5          b.     According to the Sentencing Guidelines issued pursuant to the Sentencing Reform

6   Act of 1984, the court shall:

7                 (1)     Order the defendant to make restitution to any victim of the offense unless,

8   pursuant to Title 18, United States Code, Section 3663, the court determines that restitution

9   would not be appropriate in this case;

10                (2)     Order the defendant to pay a fine, which may include the costs of probation,

11  supervised release or incarceration, unless, pursuant to Title 18, United States Code, Section

12  3611, the defendant establishes the applicability of the exceptions found therein;

13                (3)     Order the defendant, pursuant to Title 18, United States Code, Section 3583

14  to serve a term of supervised release when required by statute or when a sentence of

15  imprisonment of more than one year is imposed, and the court may impose a term of supervised

16  release in all other cases.

17         c.     Pursuant to Title 18, United States Code, Section 3013, the court is required to

18  impose a special assessment on the defendant of $100.00. The special assessment is due at the

19  time the defendant enters the plea of guilty, but in no event shall it be paid later than the time of

20  sentencing.

21  **2.        AGREEMENTS REGARDING SENTENCING**

22         a.     Pursuant to Fed. R. Crim. P. 11(c)(1)(c), the United States and the defendant

23  stipulate that the defendant shall be sentenced to a term of imprisonment of not less than thirty

24  months and not more than sixty months in prison.

25         b.     If the court, after reviewing this plea agreement, concludes that any provision is

26  inappropriate, it may reject the plea agreement, giving defendant, in accordance with

27  Fed. R. Crim. P. 11(c)(5), an opportunity to withdraw the guilty plea.

28

2

1      c.      The United States retains the unrestricted right to make any and all statements it

2  deems appropriate to the Probation Office and to make factual and legal responses to any

3  statements made by the defendant or defense counsel or objections to the presentence report or

4  to questions by the court at the time of sentencing.

5      d.      Acceptance of Responsibility  Assuming the defendant makes full and complete

6  disclosure to the Probation Department of the circumstances surrounding the defendant's

7  commission of the offense, if the defendant  would be eligible for a recommended two-point

8  reduction pursuant to Section 3E1.1 of the Guidelines and, if the defendant demonstrates an

9  acceptance of responsibility for this offense up to and including the time of sentencing, and

10 provided defendant accepts the terms of this agreement no later than January 31, 2006 the United

11 States will recommend a three-point reduction in the advisory sentencing guideline offense level,

12 as set forth in Section 3E.1 of the Guidelines.

13     e.      Criminal History Options  This plea agreement is expressly conditioned upon the

14 defendant's criminal history to be no greater than Level I.  If the defendant is found to have a

15 criminal history greater than Level I, the government shall have the option of withdrawing from

16 this agreement.

17 **3.    AGREEMENT TO MAKE RESTITUTION**

18     Defendant specifically agrees to make restitution as defined by the relevant restitution

19 statutes and case law, in an amount to be determined by the Court at sentencing.

20 **4.    WAIVER OF DEFENSES AND APPEAL RIGHTS**

21     The defendant waives any and all motions, defenses, probable cause determinations, and

22 objections which the defendant could assert to the indictment or information or to the Court's

23 entry of judgment against the defendant and imposition of sentence upon the defendant,

24 providing the sentence is consistent with this agreement.  The defendant further waives: (1) any

25 right to appeal the Court's entry of judgment against defendant; (2) any right to appeal the

26 imposition of sentence upon defendant under Title 18, United States Code, Section 3742

27 (sentence appeals); and (3) any right to collaterally attack defendant's conviction and sentence

28 under Title 28, United States Code, Section 2255, or any other collateral attack.  The defendant

3

1  acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the

2  defendant might file challenging his conviction or sentence in this case.

3  **5.   PERJURY AND OTHER FALSE STATEMENT OFFENSES OR OTHER**

4  **OFFENSES**

5         Nothing in this agreement shall be construed to protect the defendant in any way from

6  prosecution for perjury, false declaration or false statement, or any other offense committed by

7  defendant after the date of this agreement.   Any information, statements, documents, and

8  evidence which defendant provides to the United States pursuant to this agreement may be used

9  against the defendant in all such prosecutions.

10  **6.   REINSTITUTION OF PROSECUTION**

11        If defendant's guilty plea is rejected, withdrawn, vacated, or reversed at any time, the

12  United States  will be free to prosecute the defendant for all charges of which it has knowledge,

13  and any charges that have been dismissed because of this plea agreement will be automatically

14  reinstated. In such event, defendant waives any objections, motions, or defenses based upon the

15  Statute of Limitations, the Speedy Trial Act or constitutional restrictions in bringing of the later

16  charges or proceedings. The defendant understands that any statements made at the time of the

17  defendant's change of plea or sentencing may be used against the defendant in any subsequent

18  hearing, trial or proceeding as permitted by Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

19  **7.   DISCLOSURE OF INFORMATION TO U.S. PROBATION OFFICE**

20        a.     The defendant will cooperate fully with the United States Probation Office. Such

21  cooperation will include truthful statements in response to any questions posed by the Probation

22  Department including, but not limited to:

23              (1)     All criminal history information, i.e., all criminal convictions as defined

24  under the Sentencing Guidelines.

25              (2)     All financial information, e.g., present financial assets or liabilities that

26  relate to the ability of the defendant to pay a fine or restitution.

27              (3)     All history of drug abuse which would warrant a treatment condition as part

28  of sentencing.

4

1    (4)    All history of mental illness or conditions which would warrant a treatment
2  condition as a part of sentencing.

3  **8.    FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

4        a.    Nothing in this agreement shall be construed to protect the defendant from civil
5  forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an
6  action for civil forfeiture.

7        b.    Further, this agreement does not preclude the United States from instituting any
8  civil or administrative proceedings as may be appropriate now or in the future.

9                **ELEMENTS OF THE OFFENSE AND FACTUAL BASIS**

10        I understand that if this matter were to proceed to trial the United States would have to
11  prove the following elements beyond a reasonable doubt:

12  Attempted Production of a Biological Toxin for Use as a Weapon

13  1) On or about a date between March 27, 2005 and April 2, 2005 in the District of Arizona;
14  2) Defendant Casey Cutler intended to produce a biological toxin for use as a weapon;
15  3) Defendant Casey Cutler did something that was a substantial step toward the production of
16  a biological toxin.

17        Mere preparation is not a substantial step.

18  Facts

19        I further admit that if this matter were to proceed to trial the United States could prove
20  the following facts beyond a reasonable doubt:

21        On a date between  April 28, 2005 and June 4, 2005 Casey Cutler decided to produce a
22  quantity of the biological toxin ricin.  Cutler was interested in producing ricin so that he could
23  use it as a defensive weapon.  Cutler was beaten and robbed on April 28, 2005.  Cutler wanted
24  to have ricin available and package in such a way that future assailants would ingest the ricin
25  believing that it was a quantity of narcotics.

26        In order to carry out his intention to produce ricin, Cutler obtained a recipe for ricin from
27  the internet.  Because Cutler was unable to get Caster beans or a caster plant as specified by the
28  recipe, he decided to substitute castor oil, and obtained quantities of caster oil from a local store.

1  Cutler boiled the caster oil to reduce it, and utilized  acetone (as indicated by the recipe) to

2  extract the ricin from the mixture.  Cutler believed that the resulting white powder substance

3  contained ricin.  Cutler put the powder into a vial that he wore around his neck so that it would

4  be available to him as a defensive weapon.

5       I understand that I will have to swear under oath to the accuracy of this statement, and

6  if I should be called upon to testify about this matter in the future, any intentional material

7  inconsistencies in my testimony may subject me to additional penalties of perjury or false

8  swearing which may be enforced by the United States under this agreement.

9                    **DEFENDANT'S APPROVAL AND ACCEPTANCE**

10      I have read each of the provisions of the entire plea agreement with the assistance of

11  counsel and understand its provisions.

12      I have discussed the case and my constitutional and other rights with my attorney.  I

13  understand that by entering my plea of guilty I will be giving up my rights to plead not guilty,

14  to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present

15  evidence in my defense, to remain silent and refuse to be a witness against myself by asserting

16  my privilege against self-incrimination -- all with the assistance of counsel -- and to be presumed

17  innocent until proven guilty beyond a reasonable doubt.

18      I agree to enter my guilty plea as indicated above on the terms and conditions set forth

19  in this agreement.

20      I have been advised by my attorney of the nature of the charges to which I am entering

21  my guilty plea.  I have further been advised by my attorney of the nature and range of the

22  possible sentence and that my ultimate sentence will be determined after consideration of the

23  advisory Sentencing Guidelines.

24      My guilty plea is not the result of force, threats, assurances or promises other than the

25  promises contained in this agreement.  I agree to the provisions of this agreement as a voluntary

26  act on my part and I agree to be bound according to its provisions.

27      I fully understand that, if I am placed on supervised release by the court, the terms and

28  conditions of such supervised release are subject to modification at any time.  I further

6

1  understand that, if I violate any of the conditions of my supervised release, my supervised release
2  may be revoked and upon such revocation, notwithstanding any other provision of this
3  agreement, I may be required to serve a term of imprisonment or my sentence may otherwise be
4  altered.

5      I agree that this written plea agreement contains all the terms and conditions of my plea
6  and that promises made by anyone (including my attorney), and specifically any predictions as
7  to the guideline range applicable, that are not contained within this <u>written</u> plea agreement are
8  without force and effect and are null and void.

9      I am satisfied that my defense attorney has represented me in a competent manner.

10     I am fully capable of understanding the terms and conditions of this plea agreement. I
11  am not now on or under the influence of any drug, medication, liquor, or other intoxicant or
12  depressant, which would impair my ability to fully understand the terms and conditions of this
13  plea agreement.

14
15  _1-25-06_                         _Casey Cutler_
16  Date                              CASEY CUTLER
                                      Defendant

17              **DEFENSE ATTORNEY'S APPROVAL**

18     I have discussed this case and the plea agreement with my client, in detail and have
19  advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional
20  and other rights of an accused, the factual basis for and the nature of the offense to which the
21  guilty plea will be entered, possible defenses, and the consequences of the guilty plea including
22  the maximum statutory sentence possible. I have further discussed the concept of the advisory
23  sentencing guideline with the defendant. No assurances, promises, or representations have been
24  given to me or to the defendant by the United States or by any of its representatives which are
25  not contained in this written agreement. I concur in the entry of the plea as indicated above and
26  on the terms and conditions set forth in this agreement as in the best interests of my client. I
27  agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all
28  the requirements of Fed. R. Crim. P. 11.

7

1
2   Date _____ 1-25-06 _____          JOHN SANDS
                                       Attorney for Defendant
3
4
5                      **UNITED STATES' APPROVAL**

6          I have reviewed this matter and the plea agreement.  I agree on behalf of the United States

7   that the terms and conditions set forth are appropriate and are in the best interests of justice.

8
                                       PAUL K. CHARLTON
9                                      United States Attorney
                                       District of Arizona
10
11  1/25/06 _____
12  Date                               JOSEPH C. WELTY
                                       Assistant U.S. Attorney
13
14                     **COURT'S ACCEPTANCE**

15
16
17  4/12/06 _____
    Date                               HON. SUSAN R. BOLTON
18                                      United States District Judge
19
20
21
22
23
24
25
26
27
28

                          8